# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard H. Tholen, M.D., and Mary Jane Tholen, | Civil No. 18-2137 (DWF/SER) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Assist America, Inc., | |
| Defendant. | |

Ronald J. Schutz, Esq., Patrick M. Arenz, Esq., Brenda L. Joly, Esq., and Emily E. Niles, Esq., Robins Kaplan LLP, counsel for Plaintiffs.

Mark T. Berhow, Esq., Hinshaw & Culbertson LLP, counsel for Defendant.

# INTRODUCTION

Plaintiffs Richard H. Tholen, M.D. ("Dr. Tholen) and Mary Jane Tholen ("Mrs. Tholen"), sued Defendant Assist America, Inc., alleging defamation arising out of marketing material that Defendant published which detailed an accident leading to Dr. Tholen's leg amputation. This matter is before the Court on Defendant's motion to dismiss. For the reasons discussed below, the Court grants the motion.

# BACKGROUND

Dr. Tholen is a board-certified, nationally recognized plastic surgeon. (Doc. No. 1 ("Compl.") ¶¶ 16-19.) Assist America is a membership-based organization and is in the business of providing global emergency medical services, including medical evacuation

if a member does not receive adequate care locally. (*Id.* ¶ 2.) In 2015, the Tholens were Assist America members. (*Id.* ¶ 23.)

The Tholens attempted to use Assist America's services in April 2015. On April 19, 2015, while vacationing in Mazatlán, Mexico, Dr. Tholen suffered a severe knee injury in a zip lining accident. (*Id.* ¶ 21.) Dr. Tholen received immediate medical care, which included the placement of a hard cast on his leg. (*Id.* ¶ 22.) The medical professionals did not, however, check his leg for a vascular injury. (*Id.*) The Tholens allege that such care was so poor that it would be considered malpractice in the United States. (*Id.*)

The same day, the Tholens contacted an orthopedic surgeon in the United States, who advised them to have the cast removed and to return to the U.S. as soon as possible for evaluation and treatment. (*Id.*) The Tholens then visited a second hospital in Mexico, where Dr. Tholen had the cast removed. While at the second hospital, Dr. Tholen e-mailed and called Assist America requesting medical evacuation. (*Id.* ¶ 28, Ex. B; ¶¶ 29-30.) The Tholens allege that Assist America refused to evacuate the Tholens, did not consult with an Assist America medical director in reaching the decision, and told them that they were at "a very good hospital." (*Id.* ¶¶ 30-31.)

On April 20, 2015, the Tholens again contacted Assist America, and Assist America again refused to evacuate the Tholens even though no medical director had yet assessed Dr. Tholen's situation. (*Id.* ¶ 33.) On April 21, 2015, two of Assist America's medical directors—Dr. Shaffrey and Dr. Krohn—reviewed Dr. Tholen's situation and approved his evacuation to the United States. (*Id.* ¶¶ 35-36.) By then, the Tholens had

already purchased first-available tickets for a flight out of Mexico. (*Id.* ¶ 34.) The Tholens departed Mexico on April 21, 2015, and landed in Minnesota in the early morning hours of April 22, 2015. (*Id.*) Assist America did not communicate with the Tholens during this time. (*Id.* ¶¶ 40-42.)

Upon returning to Minnesota, on April 22, 2015, Dr. Tholen saw an orthopedic surgeon and a vascular surgeon. (*Id.* ¶ 43.) Over the course of several weeks, Dr. Tholen underwent numerous tests and surgical procedures designed to save his leg. (*Id.* 44-46.) Unfortunately, doctors determined that Dr. Tholen's right leg could not be saved, and on May 18, 2015, he underwent an above-knee amputation of his right leg. (*Id.* ¶ 47.) On August 24, 2017, Dr. Tholen sued Assist America for negligence and breach-of-contract, alleging that Dr. Tholen's leg could have been saved but for Assist America's negligence and breach of contractual duties. *Tholen v. Assist America, Inc.*, Civ. No. 17-3919 (DWF/SER). The Tholens' negligence and breach-of-contract action is ongoing, with the parties having completed fact discovery, exchanged opening and rebuttal expert reports, and engaged in motion practice regarding discovery. *See generally id.*

This case, however, involves allegations that Assist America published false statements and misrepresentations about the Tholens' accident and request for evacuation, and Assist America's response. Specifically, the Tholens allege that Assist America made false and defamatory statements in a case study that it published on July 26, 2016 in the Assistance and Repatriation Review 2016, a special edition of the International Travel & Health Insurance Journal ("Case Study"). (Compl. ¶ 57.)

The Case Study provides:

**Situation**

Assist America's services attached to an association membership 59-year-old male, injured in a zip lining accident in Cancun, Mexico.

**Assistance Provided**

Assist America's Operations Center in Princeton, New Jersey, US received a call from a member who stated that he had been injured while zip lining. He explained that he had struck his leg on a pulley and sustained a high-energy fracture and dislocation. The member, a doctor himself, was transported to a local clinic for casting. Unfortunately, the clinician at the local clinic put on a full circumferential cast that was too restrictive, so the patient was moved to a local reputable hospital for re-evaluation. There, the treating doctor opened the cast to reduce the pressure, and based on his findings, recommended surgery.

At this time, the member contacted Assist America and insisted on traveling to his home in the Midwest to undergo surgery, expressing fear about receiving further care abroad. Assist America's medical director explained to the member that it was highly inadvisable to travel given his condition. The safest option, he explained, would be to have the surgery performed locally at the reputable, well-equipped facility he was currently in. The member, however, declined and against the medical recommendations he was receiving from both Assist America and the local treating team, opted to make his own arrangements to travel home. Days later, Assist America was contacted by the member's wife who informed us that the patient's leg was ultimately amputated due to loss of circulation during travel.

(Compl. ¶ 6, 53, Ex. A.)

On July 24, 2018, the Tholens sued Assist America for defamation. (*Id.* ¶¶ 30-36.) The Tholens allege that the Case Study upset, disturbed, and injured them. They seek damages for mental distress, humiliation, and embarrassment. Assist America now moves to dismiss the Complaint in its entirety.

## DISCUSSION

**I.     Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II.     Defamation**

To survive a motion to dismiss on their defamation claim, the Tholens must plead: (1) a false and defamatory statement; (2) publication of that statement to a third party; and (3) harm to the Tholens' reputation. *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). Additionally, the allegedly defamatory statement "must refer to some ascertained or ascertainable person and that person must be the plaintiff." *MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 542 (8th Cir. 2008) (applying Minnesota law); *see also Bubble Pony, Inc. v. Facepunch Studios Ltd.*, Civ. No. 15-601, 2015 WL 8082708, at *5 (D. Minn. Dec. 7, 2015) (dismissing defamation claim where comment posted on internet concerning software programmer did not provide sufficient identifying information). The statement may refer to the plaintiff explicitly or "by fair implication." *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018) (internal quotation marks and citation omitted).

The Tholens allege that the Case Study contains false and defamatory statements, including:

- "[T]he treating doctor opened the cast to reduce the pressure, and based on his finding, recommended surgery." (Compl. ¶ 59.)
- "Assist America's medical director explained to the member that it was highly inadvisable to travel given his condition. The safest option, he explained, would be to have the surgery performed locally at the reputable, well-equipped facility he was currently in." (*Id.* ¶ 61.)

- "The member, however, declined and against the medical recommendations he was receiving from both Assist America and the local treating team, opted to make his own arrangements to travel home." (*Id.* ¶ 66.)
- "Days later, Assist America was contacted by the member's wife who informed us that the patient's leg was ultimately amputated due to loss of circulation during travel." (*Id.* ¶ 68.)

The Tholens contend that these statements, along with the Case Study as a whole, "paint the Tholens in a negative manner by falsely implying that Dr. Tholen's loss of his leg was based on their decision and actions." (*Id.* ¶ 71.)

Assist America argues that there are three separate bases for dismissing the Tholens' complaint. First, Assist America argues that the Case Study does not identify or refer to Dr. Tholen or Mrs. Tholen.[1] Second, the Tholens fail to allege any facts demonstrating that Dr. Tholen was harmed by the Case Study. Third, and finally, the statements in the Case Study are true and therefore not actionable under black-letter defamation law. Specifically, Assist America argues that although the Case Study contains minor inaccuracies, the Complaint and the exhibits thereto show that the Tholens made the decision to travel home to Minnesota.

---

[1] In its brief, Assist America also argues that the Complaint does not allege with the required specificity that any third parties believe the Tholens are the subject of the Case Study. At the hearing on this motion, however, Assist America conceded that the Tholens do not need to plead that any third parties actually read the Case Study.

7

Because the Case Study does not explicitly refer to the Tholens, the Court first considers whether the Case Study refers to the Tholens "by fair implication." *See MSK EyEs*, 546 F.3d at 542. The Court concludes that it is not plausible that a reader could understand the Case Study to refer to the Tholens. The Case Study did not mention the Tholens by name, and their names were not separately linked in the public domain to any stories about their accident. *Cf. Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842 (D. Minn. 2015) (finding defamatory statements referred to plaintiff by fair implication where the plaintiff's name was already associated with the underlying story in the media). Nor did the Case Study recite the exact details of the Tholens' experience, which may have reasonably led a reader to identify the Tholens as the subject of the Case Study. Instead, the Case Study changed the location of the incident and the age of the person who suffered the injury. Furthermore, it is not plausible that the target audience of the Case Study, *i.e.* travel-insurance industry professionals, would recognize the subjects of the Case Study as the Tholens. In short, the subjects of the Case Study are not readily ascertainable. The Court concludes therefore that the Case Study does not refer to the Tholens either explicitly or by fair implication.

The Tholens argue that the "rarity of the combination" of the facts identified in the Case Study create the fair implication that the Tholens are the subjects of the Case Study. (Doc. No. 11 at 9.) In support of their fair-implication argument, the Tholens rely on *Sagehorn*. (*Id.* at 8-9). But the subject of the defamatory statements in *Sagehorn*, although not explicitly identified, was readily ascertainable. In *Sagehorn*, the Court denied a motion for judgment on the pleadings as to a defamation claim where the

8

plaintiff was not mentioned by name in the allegedly defamatory statements. *Sagehorn*, 122 F. Supp. 3d at 868-69. The allegedly defamatory statements, made by a police chief, characterized the plaintiff's well-known public tweet as a "crime," a "felony," and akin to "crying or yelling 'Fire!' in a movie theater or saying 'I got a bomb!' on a plane." *Id.* at 850. The allegedly defamatory statements were made by a police chief to a news outlet concerning the plaintiff-minor whose identity was not concealed. *Id.* The Court observed that the plaintiff-minor's tweet was highly publicized and that his subsequent suspension from school was widely covered in the media. Based on these findings, the Court concluded that the complaint adequately alleged that the police chief's statements were understood to be about the plaintiff. *Id.* at 869. Here, there are no allegations that the Tholens' incident was widely publicized. Nor are there any indications that any media outlet covered the accident or subsequent response by Assist America such that the Tholens would be readily identified as the subjects of the Case Study.

The Court observes that the Tholens, and Dr. Tholen in particular, suffered a life-altering accident. But necessary to any defamation claim is a determination that the defamatory statements refer to or are understood to refer to the plaintiffs. *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 948 (D. Minn. 2001); *Covey v. Detroit Lakes Printing Co., a Div. of Forum Pub. Co.*, 490 N.W.2d 138, 143 (Minn. Ct. App. 1992). Here, the Case Study does not explicitly refer to the Tholens and nothing in it would lead a reader to understand it refers to the Tholens. Based on the foregoing, the Court concludes that the Tholens have failed to allege a plausible claim for defamation arising out of Assist America's publication of the Case Study.

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Assist America, Inc.'s Motion to Dismiss (Doc. No. [7]) is **GRANTED** and Dr. Tholen and Mrs. Tholen's Complaint (Doc. No [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 7, 2019
            s/Donovan W. Frank
            DONOVAN W. FRANK
            United States District Judge